**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 8, 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

In re:  MARSHA MCQUARRIE
LANG, also known as Marsha Lang,
also known as Marsha M. Lang,

Debtor,

------------------------

ROBERT F. LANG, M.D.,

Plaintiff-Appellee,

v.

MARSHA MCQUARRIE LANG,

Defendant-Appellant.

No. 04-4064

---

**APPEAL FROM THE TENTH CIRCUIT
BANKRUPTCY APPELLATE PANEL
(BAP No. UT-03-081)**

---

Submitted on the briefs:

Marsha McQuarrie Lang  , pro se.

Steven W. Dougherty of Anderson & Karrenberg, Salt Lake City, Utah, for
Appellee.

Before **HENRY** , **BRISCOE** , and **MURPHY** , Circuit Judges.

**MURPHY**, Circuit Judge.

This appeal [*] arises out of an adversary proceeding brought by Robert F. Lang against debtor Marsha McQuarrie Lang to establish the non-dischargeability of a claim, determine Ms. Lang's liability therefor, and award a money judgment. The bankruptcy court resolved these matters in Mr. Lang's favor, and Ms. Lang appealed to the Bankruptcy Appellate Panel (BAP). When it became apparent that the appeal was untimely, [1] Ms. Lang filed a motion for extension of time under Fed. R. Bankr. P. 8002(c) to file a second, timely notice of appeal. The bankruptcy court denied the motion, because Ms Lang had not demonstrated the excusable neglect required for relief under the rule. Ms. Lang appealed to the BAP, which affirmed. *Lang v. Lang (In re Lang)* , 305 B.R. 905 (B.A.P. 10 th Cir. 2004). She now appeals to this court. We affirm the Rule 8002(c) ruling on the basis of the BAP's opinion, which we formally adopt. We also reject, for reasons

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). Appellee's motion to waive oral argument is granted, appellant's motion for oral argument is denied, and the case is ordered submitted on the briefs.

[1] The BAP issued a show cause order and then dismissed the appeal for lack of jurisdiction. Debtor has not appealed that dismissal order.

explained below, Ms. Lang's attempt to use this appeal as a vehicle to raise jurisdictional objections relating to the underlying bankruptcy court decision on Mr. Lang's substantive claim, i.e., the judgment from which she failed to take a timely appeal.

## Rule 8002(c) Ruling

"The question of excusable neglect [under Rule 8002(c)] is by its very nature left to the discretion of the bankruptcy court whose decision should not be set aside unless the reviewing court, a district court [or BAP] or court of appeals, has a definite and firm conviction that the court below committed a clear error of judgment." *Eck v. Dodge Chem. Co. (In re Power Recovery Sys., Inc.)*, 950 F.2d 798, 801 (1 st Cir. 1991). Thus, the governing standard of review and the ruling at which it is directed are the same for us as it was for the BAP. *See Lang*, 305 B.R. at 908 & n.15. We agree fully with the well-reasoned opinion of the BAP and, as we have on other appropriate occasions, we formally adopt the decision, attached as an appendix hereto, as our own. [2] *See, e.g.*, *Hollytex Carpet Mills, Inc. v. Okla.*

---

[2]    Ms. Lang's argument that the BAP unduly emphasized her inadequate excuse for delay, contrary to *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993), is meritless. The BAP adhered to the prevailing view of the *Pioneer Investment* decision. *See generally United States v. Torres*, 372 F.3d 1159, 1163-64 (10th Cir. 2004); *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 & n.7 (2d Cir. 2003), *cert. denied*, 540 U.S. 1105 (2004).

*Employment Sec. Comm'n (In re Hollytex Carpet Mills, Inc.)*, 73 F.3d 1516, 1518 (10th Cir. 1996).

### Lack of Appellate Jurisdiction to Review
### Bankruptcy Court Jurisdiction

Ms. Lang devotes a large portion of her appellate briefing to an attack on the bankruptcy court's jurisdiction over the adversary proceeding resolved in favor of Mr. Lang as summarized above. Recognizing the procedural discontinuity between the judgment concluding the adversary proceeding and the collateral ruling before us, she seeks to bridge the gap by invoking the familiar principle that "[s]o long as a case is pending, the issue of federal court jurisdiction may be raised at any stage of the proceedings either by the parties or by the court on its own motion." *Ramey Constr. Co. v. Apache Tribe*, 673 F.2d 315, 318 (10th Cir. 1982). This argument has some facial appeal, but is undercut here by another, even more basic jurisdictional principle.

The Supreme Court has made it clear that a court's threshold determination of its jurisdiction is a prerequisite to *any* judicial action: "Without jurisdiction the court cannot proceed at all in any cause," and, thus, "when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quotation omitted). This principle applies with equal force to appellate jurisdiction. *See, e.g.*, *United States v. Ceballos-Martinez*, 387 F.3d 1140, 1143,

-4-

1146 (10 th Cir.), *cert. denied*, 125 S. Ct. 624 (2004); *Butler v. Biocore Medical Techs., Inc.*, 348 F.3d 1163, 1166 (10 th Cir. 2003).

Because our power to review any decision–including decisions involving a lower court's subject matter jurisdiction–depends on our appellate jurisdiction, "[o]n every . . . appeal, the first and fundamental question is that of jurisdiction, *first, of this court*, and *then* of the court from which the record comes." *Steel Co.*, 523 U.S. at 94 (quotation omitted and emphasis added). Thus, "the question of this Court's jurisdiction (i.e., our appellate jurisdiction) is *antecedent* to all other questions, including the question of the subject matter of the District Court." *Petroleos Mexicanos Refinacion v. M/T King A (Ex-Tbilisi)*, 377 F.3d 329, 333 n.4 (3d Cir. 2004) (holding appellant's challenge to district court's subject matter jurisdiction could not be reached until appellate jurisdiction was established); *accord Resolution Trust Corp. v. Sonny's Old Land Corp.,* 937 F.2d 128, 129 (5 th Cir. 1991) ("Before addressing the district court's jurisdiction on removal, we must decide our own jurisdiction."). While this court has not stated the point so explicitly, we have adhered to its substance. *See, e.g., Amazon, Inc. v. Dirt Camp, Inc.,* 273 F.3d 1271, 1276 (10 th Cir. 2001) ("Having established our appellate jurisdiction, we now turn to the merits of [this] appeal regarding the district court's subject matter jurisdiction over [plaintiff's] state law claims.").

Two concrete examples will illustrate this important point and help to flesh out its application here. Suppose a party moved to dismiss a case for lack of jurisdiction and the district court denied the motion. Such a ruling is generally not subject to interlocutory appeal. *See Magic Circle Energy 1981-A Drilling Program v. Lindsey (In re Magic Circle Energy Corp.)*, 889 F.2d 950, 954 (10 th Cir. 1989) (citing *Catlin v. United States*, 324 U.S. 229, 236 (1945)); *John E. Burns Drilling Co. v. Cent. Bank of Denver*, 739 F.2d 1489, 1491 (10 th Cir. 1984) (same). But this well-established prohibition on interlocutory review would be left meaningless if, as Ms. Lang contends, the lack of appellate jurisdiction did not preclude review of questions of trial court jurisdiction: following the denial of a motion to dismiss for lack of jurisdiction, the movant could bring an unauthorized appeal and still insist that the appellate court decide the jurisdictional issue on the basis that such matters can be raised at any time.

Or, more directly germane to the present circumstances, suppose the same case proceeded to final judgment and no appeal was taken. Then months later, the unsuccessful movant filed an untimely notice of appeal. One of the most firmly rooted and fundamental principles of appellate practice is the rule that a timely appeal is a prerequisite to appellate review. Yet Ms. Lang would have us hold that the untimely appellant could still insist on appellate review because a jurisdictional challenge was involved.

The direct application of the jurisdictional point made above is obscured here somewhat by the presence of two complicating circumstances that may divert attention away from the salient procedural facts, but in the end neither should have any effect on the analysis. First, the appellate jurisdictional deficiency here (Ms. Lang's failure to take a timely appeal from the underlying judgment) arose at the BAP level, not our circuit level. But for this fact to have any pertinence, it would have to be possible for a party to cure an untimely appeal to one court by appealing the resultant dismissal of that appeal to the next higher court while actually seeking review of the underlying ruling of the trial court. That is not the law. Many decisions in the bankruptcy context demonstrate that an untimely appeal to an intermediate appellate court, a district court or BAP, precludes a subsequently reviewing circuit court from reaching the underlying bankruptcy court ruling even when the intermediate court has erroneously done so. *See, e.g.*, *Deyhimy v. Rupp (In re Herwit)*, 970 F.2d 709, 709-10 (10th Cir. 1992); *Arbuckle v. First Nat'l Bank of Oxford (In re Arbuckle)*, 988 F.2d 29, 32 (5th Cir. 1993) (per curiam); *Ramsey v. Ramsey (In re Ramsey)*, 612 F.2d 1220, 1221-22 (9th Cir. 1980). And, consistent with the authority discussed earlier, the fact that the untimely appeal challenged the bankruptcy court's subject matter jurisdiction would not alter that result. *See Arbuckle*, 988 F.2d at 32.

Second, this case concerns the denial of Ms. Lang's motion for extension of time to file the BAP appeal, not the dismissal of the BAP appeal itself. But this also is immaterial to the analysis. An unsuccessful motion to cure an untimely appeal cannot itself be the vehicle for review of the matter not timely appealed. Generally, a ruling on a post-judgment motion is subject to independent appeal separate from the underlying judgment, and this is true of proceedings on motions for extension of time. 15B Charles Alan Wright, et al., *Federal Practice and Procedure* § 3916, at 351, 375-76 (2d ed. 1992); *see, e.g.*, *Bishop v. Corsentino*, 371 F.3d 1203, 1206 (10th Cir. 2004). The scope of this stand-alone appeal "should be restricted to the questions properly raised by the post-judgment motion [and] should not extend to revive lost opportunities to appeal the underlying judgment." Wright et al., *supra*, § 3916, at 351; *see, e.g.*, *Mirpuri v. ACT Mfg., Inc.,* 212 F.3d 624, 627 & n.2 (1st Cir. 2000); *cf. Stubblefield v. Windsor Capital Group*, 74 F.3d 990, 993-94 (10th Cir. 1996) (discussing Rule 60(b) cases). This principle is especially apt here, where the limited reach of the post-judgment appeal is clear as a matter of logic and common sense–if a party appealing the denial of an extension motion were allowed to challenge the underlying substantive order, the whole proceeding on the motion actually under review would be rendered meaningless.

In sum, we adopt the BAP's decision affirming the denial of Ms. Lang's motion to extend the time for appeal from the bankruptcy court's disposition of the underlying adversary proceeding. With that disposition, we fully resolve the appeal before us. Accordingly, we do not reach any other matters pressed by Ms. Lang, in particular her challenge to the bankruptcy court's jurisdiction over the claims disposed of in the adversary proceeding from which no timely appeal was taken.

The judgment of the Bankruptcy Appellate Panel is AFFIRMED.

APPENDIX
IN THE UNITED STATES BANKRUPTCY APPELLATE PANEL
OF THE TENTH CIRCUIT

ROBERT F. LANG, M.D.,
Plaintiff-Appellee,
v.
MARSHA MCQUARRIE LANG,
Defendant-Appellant.
Case No. UT-03-081
*OPINION*

Submitted on the briefs:[*]

Marsha M. Lang, pro se.

Steven W. Dougherty of Anderson & Karrenberg, Salt Lake City, Utah, for Plaintiff – Appellee Robert F. Lang.

---

Before CORNISH, MICHAEL, and McNIFF, Bankruptcy Judges.

---

MICHAEL, Bankruptcy Judge.

Marsha McQuarrie Lang ("Ms. Lang") appeals from a decision that found the press of other business in her legal practice did not excuse the failure to timely file a notice of appeal.[1]  In addition, Ms. Lang contends that the lower

---

[*]The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* FED. R. BANKR. P. 8012.  The case is therefore ordered submitted without oral argument.

[1]Ms. Lang is a licensed attorney who has appeared *pro se* throughout these proceedings.

court erred when it refused to stay its judgment of non-dischargeability pending her appeal. We find no error in either decision.

## I.     Factual Background

This appeal arises out of an adversary proceeding in which Robert F. Lang, M.D. ("Dr. Lang") contended that certain obligations owed to him by Ms. Lang were non-dischargeable under § 523 of the United States Bankruptcy Code.[2] On November 7, 2001, the bankruptcy court ruled that these obligations were non-dischargeable, and awarded a money judgment to Dr. Lang. Ms. Lang appealed this decision to this Court. She also obtained a stay of the judgment pending appeal from the bankruptcy court.

On May 28, 2003, this Court rendered its decision. While the Court agreed that the debt owed to Dr. Lang was not dischargeable, it disagreed with the bankruptcy court as to the manner in which damages were calculated, and remanded the case to the bankruptcy court for further proceedings.[3] One of the judges dissented in part, taking the position that bankruptcy courts lack the authority to enter monetary judgments in dischargeability actions.[4]

---

[2]For a more detailed discussion of the underlying dispute between Dr. Lang and Ms. Lang, *see Lang v. Lang (In re Lang)*, 293 B.R. 501 (10th Cir. BAP 2003).

[3]*Id.*

[4]*Id.* at 520–23 (Bohanon, J., concurring in part and dissenting in part).

-2-

On August 7, 2003, Ms. Lang filed in the bankruptcy court a motion (the "Stay Motion") asking the court to continue the stay pending appeal in effect, anticipating a further appeal of the bankruptcy court's decision.[5] In the body of the Stay Motion, Ms. Lang asked the bankruptcy court "to stay the Second Judgment which will enter as per remand of the Bankruptcy Appellate Panel."[6] The Stay Motion was cryptic in nature. Although it contained a recital of the legal elements required to obtain a stay pending appeal, it contained no factual allegations to support those legal elements. Dr. Lang responded to the Stay Motion on August 22, 2003.[7]

On August 14, 2003, after remand, the bankruptcy court entered its Memorandum Opinion and its Final Order and Judgment on Remand, again finding the obligations to be non-dischargeable and entering a monetary judgment against Ms. Lang in the amount of $126,891 plus interest.[8] On August 19, 2003, the bankruptcy court amended its memorandum opinion, but did not alter its order

---

[5]Appellant's App. at 3 and 63–68. We admit to being a bit confused by the timing of the motion to stay, as it appears to have been filed prior to the entry of the August 14, 2003, judgment. We need not ferret out the reasons for the peculiar timing in order to reach our decision.

[6]*Id.* at 63.

[7]*Id.* at 46–49.

[8]*Id.* at 60–61.

and judgment. Ms. Lang filed a notice of appeal (the "Notice of Appeal") from the judgment on August 29, 2003, fifteen days after its entry.

Because it appeared that the Notice of Appeal was untimely,[9] this Court entered an Order to Show Cause Why Appeal Should Not Be Considered for Dismissal as Untimely. Ms. Lang timely responded, and the matter was referred to a motions panel of this Court for determination. On October 8, 2003, this Court entered its Order dismissing the appeal for lack of jurisdiction, finding that the Notice of Appeal had not been timely filed.[10]

On September 4, 2003, more than ten days after the bankruptcy court entered its judgment, Ms. Lang filed with the bankruptcy court a pleading entitled "Motion for Extension of Time to File Appeal" (the "Extension Motion").[11] In the Extension Motion, Ms. Lang alleged that:

> Defendant, Debtor, Marsha McQuarrie Lang, failed to file [the notice of appeal] on Monday, August 25, 2003 through excusable neglect. Ms. Lang has been involved in a disputed guardianship/custody case concerning the Goff children of a magnitude that has required hours of travel between Salt Lake City, Provo and Manti on the following dates in August: August 11, 12, 13, 14, 15, 16, 17, 18, 20, 21, 22, 26, 27, 28. The case has also consumed 82.57 hours between August 11 and August 29, 2003 not counting travel time of over thirty (30)

---

[9]The applicable rule requires that "[t]he notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from." FED. R. BANKR. P. 8002(a).

[10]*See* BAP No. UT-03-070, Order entered October 8, 2003.

[11]Appellant's App. at 21.

-4-

hours for which the clients were not billed. See attached billing statements. Because of the demands of this case, in addition to Ms. Lang's regular hearings, mediations, depositions and office appointments (20), the first deadline of August 25, 2003 (August 24, 2003 was a Sunday) was inadvertently missed and Ms. Lang filed her Notice of Appeal on August 29, 2003, four days later.[12]

Ms. Lang did not assert any grounds for an extension other than the time devoted to the Goff litigation. Dr. Lang filed a response to the Extension Motion, arguing that Ms. Lang's involvement in other matters did not constitute excusable neglect.

The bankruptcy court held a hearing on the Extension Motion and the Stay Motion on September 17, 2003. Both parties made oral argument; however, Ms. Lang presented no evidence in support of either motion. At the conclusion of that hearing, the bankruptcy court denied both motions. A written order memorializing the bankruptcy court's decision was entered on September 29, 2003.[13] This appeal followed.

## II. Jurisdiction

This Court has jurisdiction to hear timely-filed appeals from "final judgments, order, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[14]

---

[12]*Id*. at 24–25.

[13]*Id.* at 5–8.

[14]28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); FED. R. BANKR. P. 8002; 10th Cir. BAP L.R. 8001-1.

Neither party elected to have this appeal heard by the United States District Court for the District of Utah, thus consenting to review by this Court.

## III. Standard of Review

We review the bankruptcy court's rulings denying an extension of time and refusing to grant a stay pending appeal for abuse of discretion.[15] "Under the abuse of discretion standard[,] 'a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'"[16] An abuse of discretion occurs when the trial court's decision is "'arbitrary, capricious or whimsical'" or results in a "manifestly unreasonable judgment."[17] As one court has put it, "[t]he question is not how the reviewing court would have ruled, but rather whether a reasonable person could

---

[15]*Berger v. Buck (In re Buck)*, 220 B.R. 999, 1003 (10th Cir. BAP 1998) (abuse of discretion standard applied to denial of motion to extend time to file notice of appeal); FED. R. CIV. P. 62(b) (stay pending appeal a matter left to the discretion of the court).

[16]*Moothart v. Bell,* 21 F.3d 1499, 1504 (10th Cir. 1994) (quoting *McEwen v. City of Norman,* 926 F.2d 1539, 1553-54 (10th Cir. 1991)).

[17]*Id.* at 1504-05 (quoting *United States v. Wright,* 826 F.2d 938, 943 (10th Cir. 1987)).

agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion."[18]

## IV. Discussion

### A. The Extension Motion

The Notice of Appeal has been found to be untimely. We must decide whether the bankruptcy court abused its discretion in refusing to extend the time for filing a notice of appeal. In seeking the extension, Ms. Lang relied upon FED. R. BANKR. P. 8002(c)(2), which provides that:

> A request to extend the time for filing a notice of appeal must be made by written motion filed before the time for filing a notice of appeal has expired, except that such a motion filed not later than 20 days after the expiration of the time for filing a notice of appeal may be granted *upon a showing of excusable neglect*. An extension of time for filing a notice of appeal may not exceed 20 days from the expiration of the time for filing a notice of appeal otherwise prescribed by this rule or 10 days from the date of entry of the order granting the motion, whichever is later.[19]

Ms. Lang claims that her involvement in state court litigation during the time in question constituted "excusable neglect" for purposes of this rule, and that the bankruptcy court abused its discretion in failing to allow the late filing of the Notice of Appeal.

---

[18]*In re M. J. Waterman & Assocs., Inc.*, 227 F.3d 604, 608 (6th Cir. 2000), *cited with approval in Allied Domecq Retailing USA v. Schultz (In re Schultz)*, 254 B.R. 149, 151 (6th Cir. BAP 2000).

[19]FED. R. BANKR. P. 8002(c)(2) (emphasis added).

In support of her position, Ms. Lang relies upon the decision of the United States Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership.*[20] The facts of *Pioneer* are dissimilar to the case at bar. *Pioneer* involved the filing of a proof of claim in a Chapter 11 case. In *Pioneer*, the claimants filed their claims after the claims bar date. The bankruptcy court refused to recognize the claims due to their untimeliness. The claimants argued that the bankruptcy court should consider the claims as timely filed under FED. R. BANKR. P. 9006(b)(1), which allows a late claim to considered timely if the late filing is the result of "excusable neglect."[21] They also argued that excusable neglect was present because a claims deadline was unusual in a Chapter 11 bankruptcy case and the claims deadline was "buried" in the fine print of the notice of meeting of creditors. The court of appeals reversed the decision of the bankruptcy court in its entirety, finding that excusable neglect had been shown, and ordered that the claims be treated as timely.

The Supreme Court affirmed the decision of the court of appeals. In doing so, the Supreme Court stated that excusable neglect is "a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond

[20]507 U.S. 380 (1993).

[21]FED. R. BANKR. P. 9006(b)(1).

the control of the movant."[22]  In its holding, the Court concluded "that the determination is … an equitable one, taking account of all relevant circumstances . . . ."[23]  Factors specifically enumerated include:  (1) the danger of prejudice to opposing parties; (2) length of delay in judicial proceedings and its impact; (3) the reason for the delay, including whether it was in the control of the late-filer; and (4) whether the late-filer acted in good faith.[24]  The Supreme Court found excusable neglect to be present because the deadline for filing claims in *Pioneer* was not made a conspicuous part of the notice sent to creditors and that a claims deadline such as the deadline at issue was "outside the ordinary course in bankruptcy cases."[25]  However, the Court stated that in considering the issue of excusable neglect, "we give little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date."[26]

Ms. Lang has not cited, and the Court in conducting its own research has been unable to locate, a single case that stands for the proposition she asks us to adopt:  namely, that the failure to comply with the deadline for the filing of a

---

[22]*Pioneer,* 507 U.S. at 392 (footnote omitted).

[23]*Id.* at 395.

[24]*Id.* (citing *In re Pioneer Inv. Services Co.*, 943 F.2d 673, 677 (6th Cir. 1991)).

[25]*Id.* at 398.

[26]*Id.*

notice of appeal due to the press of other business constitutes excusable neglect.

Virtually all of the published decisions on the issue, both pre-and post-*Pioneer*,

reach the opposite conclusion.[27]  We believe that the language contained in

*Pioneer* to the effect that "upheaval" in a law practice is not probative of

excusable neglect precludes Ms. Lang's reliance upon *Pioneer*.[28]

---

[27]*See, e.g., In re Morrow*, 564 F.2d 189, 190 (5th Cir. 1977) (in applying precursor to Bankruptcy Rule 8002, court determined that "counsel's workload does not permit a finding of excusable neglect."); *Wittman v. Toll (In re Cordry),* 149 B.R. 970, 977 (D. Kan. 1993) (and cases cited therein) ("Consistently, courts have held that an attorney's preoccupation or involvement in other cases or litigation does not constitute excusable neglect."); *Shultz*, 254 B.R. at 153–54 (excusable neglect found due to serious illness of attorney's spouse; court noted that "law office upheaval" normally not sufficient for excusable neglect); *Schmidt v. Boggs (In re Boggs)*, 246 B.R. 265, 268 (6th Cir. BAP 2000) ("'Where counsel have attempted to convince courts that deadlines missed through mistakes made by office staff or by other pressures associated with the operation of a legal practice were the result of excusable neglect, they have been soundly rebuffed.'"); *In re Mizisin*, 165 B.R. 834, 835 (Bankr. N. D. Ohio 1994) ("Misunderstanding of the Bankruptcy Code and Rules and heavy workload of counsel do not constitute excusable neglect."); *In re GF Corp.*, 127 B.R. 382, 383 (Bankr. N.D. Ohio 1991) ("[C]ourts have specifically held that an attorney's preoccupation with other litigation cannot constitute excusable neglect."); *Aponte v. Aungst (In re Aponte)*, 91 B.R. 9, 12 (Bankr. E.D. Pa. 1988) ("While we are sympathetic to the demands of litigation, such is a foreseeable consequence of practicing law and such an excuse does not rise to the level of N.B.R. 8002 excusable neglect."); *In re Snow*, 23 B.R. 655, 657 (Bankr. E.D. Cal. 1982) ("The mere difficulty with office help, inadvertence, and the press of other matters are insufficient to constitute excusable neglect.").

[28]We also note the significant factual differences between this case and *Pioneer*. In *Pioneer*, not only was the existence of a claims deadline unusual, the notice of the claims deadline was not predominantly featured in the notice provided to the claimants.  In this case, the deadline for the filing of a notice of appeal is a matter of rule that applies to each and every decision of a bankruptcy court, and was a

(continued...)

-10-

The only basis set forth in the Extension Motion to justify Ms. Lang's neglect in this matter was the press of other business. However, in the brief that was submitted to this Court, Ms. Lang argues that she will be prejudiced if the Extension Motion is not allowed because she will be unable to prosecute her appeal. Ms. Lang may be correct, but regardless, dismissal of an appeal is not the type of prejudice that will support a finding of excusable neglect. If it were, then all neglect could be considered excusable, because every finding that an appeal has not been timely filed results in the termination of the appeal. The bankruptcy court followed established precedent and did not abuse its discretion in denying the Extension Motion.

### B. The Stay Motion

Ms. Lang also asks us to reverse the decision of the bankruptcy court denying the Stay Motion. The factors to be considered by a court in determining whether to grant a stay pending appeal are well established. They are (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will suffer irreparable injury unless the stay is granted; (3) whether granting the stay will result in substantial harm to the other parties to the appeal; and (4) the effect of granting the stay upon the public

---

[28](...continued)
matter well known to Ms. Lang, given her prior experience in prosecuting appeals from bankruptcy courts on her own behalf.

interest.[29]  The decision of whether to grant a stay pending appeal is left to the

discretion of the bankruptcy court.[30]  We review this decision for an abuse of

discretion.[31]

_____

[29]*See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (reviewing standard for stay under FED. R. CIV. P. 62(c)); *see also In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1300 (7th Cir. 1997) (reviewing standard for stay under Bankruptcy Rule 8005); *see also Jarboe v. Yukon Nat'l Bank (In re Porter)*, 54 B.R. 81, 82 (Bankr. N.D. Okla. 1985) (same).

[30]*Forty-Eight Insulations, Inc.*, 115 F.3d at 1301; *In re King*, 482 F.2d 552, 556 (10th Cir. 1973) (Bankruptcy Act case); *WCI Cable, Inc. v. Alaska R.R. Corp. (In re WCI Cable, Inc.)*, 285 B.R. 476, 478 (D. Ore. 2002) (district court decision); *In re Level Propane Gases, Inc.*, 304 B.R. 775, 777 (Bankr. N.D. Ohio 2004).

[31]To some degree, review of this decision is a bit puzzling, given the existence of the following rule:

> A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. A motion for such relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge. The district court or the bankruptcy appellate panel may condition the relief it grants under this rule on the filing of a bond or other appropriate security with the bankruptcy court. When an appeal is taken by a trustee, a bond or other appropriate security may be required, but when an appeal is taken by the United States or an officer or agency thereof or by direction of any department of the
>
> (continued...)

In this case, the bankruptcy court determined that Ms. Lang did not establish a sufficient likelihood of success on the merits of her appeal. We cannot say that the bankruptcy court abused its discretion. On appeal, all three judges of this Court agreed that the debt owed to Dr. Lang by Ms. Lang was not dischargeable; the only disagreement was over whether the bankruptcy court had the ability to enter a monetary judgment for the amount due. There is ample authority to support the proposition that bankruptcy courts can enter a monetary judgment.[32] To agree with that authority is not an abuse of discretion.

_____

[31](...continued)
> Government of the United States a bond or other security shall not be required.

FED. R. BANKR. P. 8005. Under this rule, if the bankruptcy court denies a stay pending appeal, the request may be made anew to the appellate court. Given the ability of a litigant to renew (and argue *de novo*) his or her request for a stay, it is difficult to understand the utility of seeking review of the lower court decision. At least one court has held that the decision of a bankruptcy court to deny a stay pending appeal is not reviewable, given the ability of the litigant to renew its request for a stay to the appellate court. *See In re Ernst Home Center, Inc.*, 221 B.R. 243, 248 (9th Cir. BAP 1998) (Russell, J., concurring).

[32]Circuit courts that have looked at the issue have concluded that bankruptcy courts have jurisdiction to enter money judgments in § 523 cases. *See, e.g., N.I.S. Corp. v. Hallahan (In re Hallahan)*, 936 F.2d 1496, 1508 (7th Cir. 1991); *Atassi v. McLaren (In re McLaren)*, 990 F.2d 850, 854 (6th Cir. 1993); *Longo v. McLaren (In re McLaren)* 3 F.3d 958, 961 (6th Cir. 1993); *Porges v. Gruntal & Co., Inc. (In re Porges)*, 44 F.3d 159, 163-65 (2nd Cir. 1995); *Cowen v. Kennedy (In re Kennedy)* 108 F.3d 1015, 1017-18 (9th Cir. 1997); *cf. Abramowitz v. Palmer*, 999 F.2d 1274, 1279 (8th Cir. 1993) (holding bankruptcy court had authority to enter money judgment in non-core proceeding). While the Tenth Circuit has not been presented with the issue directly, in at least one case, *In re*

(continued...)

There is yet another reason to affirm the decision of the bankruptcy court with respect to the Stay Motion. In the Stay Motion and at oral argument, Ms Lang asked the bankruptcy court to stay the "Second Judgment which will enter as per remand of the Bankruptcy Appellate Panel."[33] However, the judgment that Ms. Lang seeks to stay is no longer subject to appeal given this Court's decision affirming the denial of the Extension Motion. Therefore, the Stay Motion is moot.

## V. Conclusion

The decision of the bankruptcy court is AFFIRMED.

---

[32](...continued)
*McGavin*, 189 F.3d 1215, 1220 (10th Cir. 1999), the court has affirmed a bankruptcy court's granting of a money judgment on legal grounds similar to those used by the above cited cases. Lower courts in the Tenth Circuit have split on the issue, with the majority ruling that bankruptcy courts are authorized to enter money judgments. *See, e.g., Boucher v. McCarter (In re McCarter)*, 289 B.R. 759, 762-63 (Bankr. D. N.M. 2002)*; Hixson v. Hixson (In re Hixson)*, 252 B.R. 195, 198-199 (Bankr. E.D. Okla. 2000)*; Builders Steel Co., Inc. v. Heidenreich (In re Heidenreich)*, 216 B.R. 61 (Bankr. N.D. Okla. 1998)*; Valencia v. Lucero (In re Valencia)*, 213 B.R. 594, 596 (D. Colo. 1997).

[33]Appellant's App. at 63 (text of the Stay Motion); *see also id.* at 158, lines 13–14 (Transcript of hearing on the Stay Motion) ("MS. LANG: Your Honor, we're coming here today to ask you to stay the second judgment that was entered in this matter.").